IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| THE ROMAN CATHOLIC ARCHDIOCESE OF ATLANTA, et al., <br><br> **Plaintiffs,** <br><br> v. <br><br> KATHLEEN SEBELIUS, in her official capacity as Secretary, United States Department of Health and Human Services, et al., <br><br> **Defendants.** | 1:12-cv-03489-WSD |

**OPINION AND ORDER**

This matter is before the Court on the Defendants' Motion for Reconsideration and/or Clarification of Specific Issues regarding the Court's March 26, 2014 Opinion and Order [109].

**I.   BACKGROUND**

On April 3, 2014, the Defendants moved to reconsider or clarify two specific issues regarding the Court's March 26, 2014 Opinion and Order.  First, the Defendants contend that the Court's Order was incomplete because their Motion to Dismiss or, in the alternative, for Summary Judgment was granted only on the

Plaintiffs' claims based on the Establishment Clause, the Administrative Procedures Act, and unconstitutional delegation of authority.  Defendants request the Court to enter a final judgment in their favor on the Diocesan Plaintiffs' Religious Freedom Restoration Act ("RFRA") claim, and the Plaintiffs' free exercise, compelled speech, and internal church governance claims.  Defendants argue that in their Motion to Dismiss or, in the alternative, for Summary Judgment, they moved to dismiss the Plaintiffs' Second Amended Complaint "in its entirety," and requested the Court to grant them summary judgment on all claims raised in the Plaintiffs' Second Amended Complaint.  Defendants also contend that they incorporated by reference the arguments made in opposition to the Plaintiffs' Motion for Preliminary Injunction into their Motion to Dismiss or, in the alternative, for Summary Judgment regarding the Plaintiffs' RFRA, Free Exercise Clause, Free Speech Clause, and internal church governance claims.

Second, the Defendants move the Court to "revisit its RFRA analysis . . . and issue any further Order it considers appropriate" on the ground that the Court's March 26, 2014 Opinion and Order "assumed" that the health plans operated and established by the Atlanta Archdiocese and the Savannah Diocese are "church plan[s]."  Defendants argue that the term "church plan" is a term of art under ERISA, and "it is not the case that every health plan sponsored or established by a

church or integrated auxiliary is a 'church plan' within the meaning of ERISA." Defendants also argue that the Plaintiffs have not alleged that they "operate a 'church plan,' and it is for that reason that defendants did not make the sorts of arguments they have made in cases that do involve 'church plans.'"

On April 15, 2014, Plaintiffs replied to the Defendants' Motion for Reconsideration. Plaintiffs do not dispute that Defendants moved to dismiss or, in the alternative, for summary judgment, on all of the Plaintiffs' claims and thus, they do not oppose the entry of a final judgment in favor of Defendants to the extent that the Court's March 26, 2014 Opinion and Order determined that the Diocesan Plaintiffs' RFRA claim, and the Plaintiffs' free exercise, compelled speech, and internal church governance claims fail as a matter of law. Plaintiffs, however, oppose the Defendants' Motion for Reconsideration regarding the claim that Plaintiffs do not have a "church plan." Plaintiffs state that Defendants have offered no evidence to contest the Court's conclusion that the health plans at issue are "church plans" within the meaning of ERISA, and Defendants' speculative arguments on that issue are insufficient to grant a Motion for Reconsideration.

On April 23, 2014, Defendants replied to the Plaintiffs' Response to the Motion for Reconsideration. In their Reply, Defendants insist that Plaintiffs' response fails to demonstrate that the health plans in this case are "church plans"

3

within the meaning of ERISA, and that "having set the terms of the dispute, plaintiffs cannot fault defendants for litigating this case within those terms, and now, for requesting that the Court decide this case within those same terms."

## II.   DISCUSSION

### A.   Legal Standard

"A motion for reconsideration made after final judgment falls within the ambit of either Rule 59(e) (motion to alter or amend a judgment) or Rule 60(b) (motion for relief from judgment or order)." Region 8 Forest Serv. Timber Purchasers Council v. Alcock, 993 F.2d 800, 806 n.5 (11th Cir. 1993). The Court does not reconsider its orders as a matter of routine practice. LR 7.2 E., NDGa. The Court's Local Rules require the parties to file motions for reconsideration "within twenty-eight (28) days after entry of the order or judgment." Id.

Defendants seek reconsideration pursuant to Rule 59(e). Motions for reconsideration under Rule 59(e) are appropriate only where there is newly-discovered evidence[1] or a need to correct a manifest error of law or fact. See Hood

---

[1] Evidence that could have been discovered and presented on the previously-filed motion is not newly discovered. See Arthur v. King, 500 F.3d 1335, 1343-44 (11th Cir. 2007); see also Mays v. U.S. Postal Serv., 122 F.3d 43, 46 (11th Cir. 1997) ("We join those circuits in holding that where a party attempts to introduce previously unsubmitted evidence on a motion to reconsider, the court should not grant the motion absent some showing that the evidence was not available during the pendency of the motion.").

v. Perdue, 300 F. App'x 699, 700 (11th Cir. 2008) (citing Pres. Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Eng'rs, 916 F. Supp. 1557, 1560 (N.D. Ga. 1995), aff'd, 87 F.3d 1242 (11th Cir. 1996)); Arthur, 500 F.3d at 1343 ("The only grounds for granting [a Rule 59] motion are newly-discovered evidence or manifest errors of law or fact."); Jersawitz v. People TV, 71 F. Supp. 2d 1330, 1344 (N.D. Ga. 1999).[2]

A motion for reconsideration should not be used to present the Court with arguments already heard and dismissed, or to offer new legal theories or evidence that could have been presented in the previously-filed motion. See Arthur, 500 F.3d at 1343; O'Neal v. Kennamer, 958 F.2d 1044, 1047 (11th Cir. 1992); Bryan v. Murphy, 246 F. Supp. 2d 1256, 1259 (N.D. Ga. 2003); see also Jones v. S. Pan Servs., 450 F. App'x 860, 863 (11th Cir. 2012) ("A motion to alter or amend a judgment cannot be used to relitigate old matters, raise arguments, or present evidence that could have been raised prior to the entry of judgment."); Pres. Endangered Areas, 916 F. Supp. at 1560 ("A motion for reconsideration is not an opportunity for the moving party and their counsel to instruct the court on

---

[2] Motions for reconsideration under Rule 60(b) are appropriate only where there is "mistake, inadvertence, surprise, or excusable neglect," newly discovered evidence, fraud, a void judgment, or a judgment that has been satisfied or is no longer applicable. Fed. R. Civ. P. 60(b).

how the court 'could have done it better' the first time."). Whether to grant a motion for reconsideration is within the sound discretion of the district court. See Region 8, 993 F.2d at 806.

B.  Analysis

There is no dispute that Defendants moved to dismiss or, in the alternative, for summary judgment on all claims raised in the Plaintiffs' Second Amended Complaint. On September 12, 2013, the Court granted the Defendants' unopposed Motion for Leave to File Excess Pages, and allowed the Defendants to file a 15-page brief in support of their Motion and, in that brief, the Court allowed the Defendants to incorporate by reference their brief in opposition to Plaintiffs' Motion for Preliminary Injunction. On the basis of these undisputed facts and because the Court's March 26, 2014, Opinion and Order determined that Plaintiffs' remaining claims failed as a matter of law, the Court grants the Defendants' Motion to Dismiss or, in the alternative, for Summary Judgment on the Diocesan Plaintiffs' RFRA claim, and the Plaintiffs' Free Exercise, Compelled Speech, and internal church governance claims. The Defendants' Motion for Reconsideration on this issue is granted.

In the March 26, 2014 Opinion and Order, the Court found that the Plaintiffs had standing to pursue their claims due to several reasons, including the alleged

economic losses sustained by the Atlanta Plan, the compulsion to execute and deliver a self-certification form to a third party administrator ("TPA"), and the risk of expulsion from the Atlanta Plan faced by CENGI and Catholic Charities. The Court also addressed and rejected the Defendants' argument made in other cases that "church plans" do not have standing, noting that Plaintiffs have standing to pursue their claims regardless of whether their employees and their beneficiaries are covered by a health plan defined as a "church plan" within the meaning of ERISA.

As for the Court's decision on the merits, in section II(B)(1)(i)(b)(ii) of the March 26, 2014 Opinion and Order, the Court found that the requirement imposed on CENGI and Catholic Charities to execute a self-certification form and deliver it to their TPA violated the RFRA for several reasons, finding that Plaintiffs had demonstrated that the self-certification form was an integral part of the Government's contraceptive coverage scheme that created rights and responsibilities, and it is a Government imposed device that pressures the Plaintiffs into facilitating the contraceptive coverage to which they have sincerely held religious objections. That conclusion, which was based on the plain terms of the Final Rules and their operative effect, does not depend on the presence or absence of a "church plan." The Court found that this analysis does not change even if the

Government had argued, as it has in other cases, that it has no ERISA authority to require a "church plan" to contract with a TPA to provide contraceptive coverage or to compel a TPA to provide contraceptive coverage after the TPA agrees to enter into a contract with the Plaintiffs and receives the self-certification form. Because the Court's substantive analysis of the RFRA claim raised by CENGI and Catholic Charities is not affected by whether the Atlanta Plan and Savannah Plan are "church plans" within the meaning of ERISA, the Defendants' Motion for Reconsideration on this issue is required to be denied.

Although not necessary to the Court's decision, the Court evaluates the Defendants' argument that Plaintiffs did not allege that they operate and maintain ERISA defined "church plans."  Defendants do not dispute that the "Atlanta Archdiocese makes health insurance benefits available to its religious personnel, seminaries, and full-time employees through the Roman Catholic Archdiocese of Atlanta Group Health Plan . . .[,]" which provides benefits to nearly 1,530 employees and 1,070 dependants.  Pls.' Statement of Undisputed Material Facts at ¶ 1 ("PSMF").  Defendants also do not dispute that the "Savannah Diocese makes health insurance benefits available to its employees through the Roman Catholic Diocese of Savannah Group Health Care Plan."  PSMF at ¶ 11.

Section 1002(33)(A) of the Employment Retirement Security Act

("ERISA") of 1974 defines the "term 'church plan' to mean a plan established and maintained . . . for its employees (or their beneficiaries) by a church or by a convention or association of churches which is exempt from tax under section 501 of Title 26." 29 U.S.C. § 1002(33)(A) (2005).  It is undisputed that the Atlanta Plan and the Savannah Plan meet the requirements of Section 1002(33)(A).  There is also no dispute in this case that Catholic Charities and CENGI are "religious entities that are part of the Roman Catholic Church."  PSMF at ¶ 19.  The employees of Catholic Charities and CENGI are thus deemed to be employees of the Archdiocese of Atlanta because these entities are "controlled by or associated with a church or convention or association of churches."  29 U.S.C. § 1002(C)(ii)-(iii).  Given the Defendants' concession that Catholic Charities and CENGI are "part of the Roman Catholic Church," there is no dispute that these organizations are "controlled by or associated" with the Atlanta Archdiocese.[3]

Section 1002(33)(B) states that the term "church plan" does not include a

---

[3] An organization is "associated" with a church within the meaning of ERISA if it shares "common religious bonds and convictions" with the church. Lown v. Continental Cas. Co., 238 F.3d 543, 548 (4th Cir. 2001).  There can be no doubt that the Complaint and the PSMF are replete with instances that describe how Catholic Charities and CENGI share common religious bonds and convictions with the Atlanta Archdiocese.  The Government does not dispute the allegations or the facts that describe the nature and purpose of CENGI and Catholic Charities as set out in the PSMF.

plan (i) which is established and maintained primarily for the benefit of employees (or their beneficiaries) of such church or convention or association of churches who are employed in connection with one or more unrelated trades or business (within the meaning of section 513 of Title 26), or (ii) if less than substantially all of the individuals included in the plan are individuals . . . [,]" who are not employees of a church or employees of "an organization, whether a civil law corporation or otherwise, which is exempt from tax under Section 501 of Title 26 and which is controlled by or associated with a church or a convention or association of churches . . . " 29 U.S.C. § 1002(33)(B); Id. § 1002(33)(C)(ii).

These exceptions do not apply here because there is no dispute that Catholic Charities and CENGI are charitable and educational entities that execute the Atlanta Archdiocese's charitable and educational mission. Section 10002(33)(B)(i) thus does not apply, and there is no dispute that the employees of CENGI and Catholic Charities qualify as employees of the Roman Catholic Archdiocese of Atlanta within the meaning of ERISA. The Court notes that had it been necessary to do so, it would find that the undisputed facts sufficiently demonstrate that the Plaintiffs maintain and operate a "church plan" within the

meaning of ERISA.[4]

If the Court accepted the Government's argument that it should not consider the health plans at issue as "church plans" because that characterization was not used, the Final Rules impose on CENGI and Catholic Charities an obligation to find immediately a TPA that provides contraceptive coverage if their existing TPA refuses to do so. See 29 C.F.R. § 2590.713A(b)(1)-(4). These facts further support the need to grant injunctive relief to the Plaintiffs.[5] For the reasons stated above, the Defendants' Motion for Reconsideration on the ground that the Court should

---

[4] The only difference between this case and other "church plan" cases is that some of the Plaintiffs in the other cases specifically alleged that the Archdiocese operates a self-insured health plan, which is "recognized under [ERISA] as a 'church plan.'" Defs.' Resp. to Pls.' Statement of Material Facts at ¶ 2, Roman Catholic Archbishop of Washington v. Sebelius, No. 12-1441(ABJ), 2013 WL 6729515 (D.D.C. Dec. 20, 2013). The crux of the Defendants' argument is that facts alleged in the Complaint, which support that a "church plan" is at issue must also specifically allege that the "church plan" is "governed by ERISA." Because the Plaintiffs did not use the legal characterization and specifically allege that the health plans were "governed by ERISA," the Complaint, in the Defendants' view, failed to state that the health plans were "church plans" within the meaning of ERISA. Such an exacting pleading standard is contrary to the standards established by the Federal Rules of Civil Procedure. See F.R.C.P. 8(d)(1) ("each allegation must be simple, concise and direct. No technical form is required.").

[5] Even those few Courts that have found the self-certification requirement not to be a substantial burden under RFRA state that the obligation to find a TPA that provides contraceptive coverage if the existing TPA refuses to do so is a Government imposed compulsion that goes too far. See Roman Catholic Archbishop of Washington v. Sebelius, 2013 WL 6729515, at *22.

reevaluate its RFRA analysis is denied.

## III.     CONCLUSION

Accordingly, for the foregoing reasons,

**IT IS HEREBY ORDERED** that the Defendants' Motion for Reconsideration is **GRANTED** in part and **DENIED** in part.  It is **GRANTED** with respect to the Defendants' request to enter a final judgment on the Diocesan Plaintiffs' RFRA claim, and the Plaintiffs' free exercise clause, compelled speech, and internal church governance claims.  **IT IS FURTHER ORDERED** that the Defendants' Motion to Dismiss or, in the alternative, for Summary Judgment [64] on the Diocesan Plaintiffs' RFRA claim, and the Plaintiffs' free exercise clause, compelled speech, and internal church governance claims is **GRANTED**.[6]  Defendants' Motion for Reconsideration is **DENIED** with respect to the Defendants' claim that the Court should reevaluate its RFRA analysis because Plaintiffs did not allege that they operate and maintain a "church plan" within the meaning of ERISA.

---

[6] Given that the Court's March 26, 2014 Opinion and Order granted the Plaintiffs' Motion for Summary Judgment on the RFRA claim raised by Plaintiffs Catholic Charities and CENGI, and the Plaintiffs' "gag-order" claim, the Defendants' Motion to Dismiss, or in the alternative, for Summary Judgment on these claims is necessarily **DENIED** [64].

**SO ORDERED** this 30th day of May 2014.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE